THE STATE OF DELAWARE, ex rel. DAVID LINDSAY, *vs.* JESSUP AND
MOORE PAPER COMPANY, a corporation of the State of Dela-
ware.

THE STATE OF DELAWARE, ex rel. HORACE T. BRUMLEY, *vs.*
JESSUP AND MOORE PAPER COMPANY, a corporation of the
State of Delaware.

*Mandamus—Alternative Writ—Return; Motion to Quash for
Insufficiency—Pleading—Practice—Stockholder—Inspec-
tion of Books and Papers; Purpose of—Corpora-
tion—By-Law.*

1.   A motion to quash the return to the alternative writ of mandamus
is founded upon the proposition, that,conceding the truth of every material
allegation properly pleaded in the return of the respondent, as a mat-
ter of law no sufficient defense has been shown.   The question to be deci-
ded is, whether upon the face of the return the condition of the relator
and the respondent is so changed as to prevent or delay the issue of the
peremptory writ.

2.   The averment of the respondent that certain books and papers,
the inspection of which is asked for, are now out of the State, would not
avail.   If their inspection was necessary the Court would order their
production.

3.   The by-law set up as a defense, which absolutely vests in the dis-
cretion of the directors the right of a stockholder to inspect or examine
the books of the company, and which makes the decision of the directors
final, is both unreasonable and unlawful, and would be so regarded by the
Court.

4.   The return may be in some respects evasive and argumentative
and yet contain denials of such material facts and conditions set forth in
the petition of the relator as to make the Court hesitate in granting a
peremptory writ.

5.   As the case stands upon the motion to quash the return, the ques-
tion is simply, whether the petitioner upon the face of the petition and
return is entitled to the peremptory writ for the purpose of ascertaining
the actual value of his stock.

6.   While on the one hand it is the duty of the directors of corpora-
tions to afford to their stockholders every reasonable opportunity to get
accurate information as to the conduct and management of the business of
which they merely act as trustees, yet, on the other hand, it is their duty
to protect the interests of the stockholders.   The books and papers in
their charge should not be subject to unnecessary, unreasonable or un-

timely inspection. The directors are clearly entitled to have the assurance that the information sought is not for the purpose of injuring their business, or building up a rival or competitive concern, or any other improper purpose.

(<i>June 4, 1909.</i>)

LORE, C. J., and BOYCE, J., sitting.

*William S. Hilles* for the Relator, David Lindsay.

*Robert H. Richards* for the Relator, Horace T. Brumley.

*Saulsbury, Ponder and Curtis* for the Respondent.

Superior Court, New Castle County, May Term, 1909.

(Nos. 111 and 114 June Term, 1908, respectively. Mandamus.)

LORE, C. J.:—These two cases were argued together, as they embrace many questions in common, while the points of difference are few and easily distinguished.

At this stage, we are asked to quash the return of the respondent to the alternative writ of mandamus in each case, upon the ground that the return is uncertain, argumentative, ambiguous, evasive, inconsistent, immaterial and insufficient.

The Court has heretofore passed upon the sufficiency of the case of each relator, upon the facts of the petition to adequate relief, and has awarded in each case an alternative writ of mandamus. The return of the respondent to each writ was filed January 16, 1909.

The question for us to decide in each case is whether upon the face of the return, the condition of the relator and the respondent is so changed as to prevent or delay the issue of the peremptory writ.

The motion to quash is founded upon the proposition, that, conceding the truth of every material allegation properly pleaded in the return of the respondent, as a matter of law no sufficient

defense has been shown.

The relator, David Lindsay in the first case, claims that he is the owner of thirteen hundred shares of the common stock of the respondent company, of the par value of $130,000.00; that he has received for several years no dividends thereon.

He states that *certain of those shares* have been pledged to the National Bank of Delaware as collateral security for certain promissory notes for which he is liable; that the bank demands from him assurance of the sufficiency of the collateral security so held by it, or that he pay the notes.

He further states that he wishes to dispose of a *part of his* said stock and cannot give satisfactory knowledge to the probable purchasers thereof as he has no knowledge of the value of the shares; that the respondent has refused to permit him to inspect the books or to give him the needed information, although he has frequently requested it so to do. He also further avers that certain shares of preferred stock have been issued for less than par, to the detriment of the common stockholders.

He claims that his purpose is to ascertain the actual value of the stock that he holds. For that purpose he asks to be permitted to inspect and copy (1) the minutes of the stockholders and directors of the said company from August 1, 1906, to this time; (2) the ledger and trial balances of the said company covering the period aforesaid; (3) the preferred stock books of the said company showing the dates, number of shares, and the persons owning the preferred stock of the said company; (4) also the statements rendered to the directors covering the business of the said company for the period aforesaid.

The return of the respondent avers that Lindsay was the Secretary and Superintendent of the respondent company until December 5, 1906, and a director of the company until July 26, 1907; that as such he knew and participated in the issue of the preferred stock, was familiar with the amount and holders of both common and preferred stock, and also with the entire business of the company; that he has all the knowledge needed to ascertain the actual value of his stock. That from such famili-

arity with the business as aforesaid and from other information furnished him by the respondent, he is fully informed as to the data necessary to ascertain said value.

That before Lindsay had severed his official connection with the respondent company, he with his two sons who had theretofore been employees of the respondent, had organized a rival competitive company in the same business, which company is now one of the most important competitors of the Jessup and Moore Paper Company.

The averment of the respondent, that certain books and papers, the inspection of which is asked for, are now in Philadelphia would not avail.    If their inspection was necessary the Court would order their production.    The by-law set up as a defense, which absolutely vests in the discretion of the directors the right of a stockholder to inspect or examine the books of the company, and which makes the decision of the directors final, is both unreasonable and unlawful and would be so regarded by this Court.

The return is in some respects evasive and argumentative, yet it contains denials of such material facts and conditions set forth in the petition of the relator as to make the Court hesitate in granting a peremptory writ.

In the light of the return, some of the averments of the petition are too vague and general to be decisive.

The petition of Horace T. Brumley, the relator in the second case, sets forth that he is the owner of six hundred and eighty shares of the common stock of the respondent company of the par value of $68,000.00; that he acquired title thereto in a transaction in which he was an accommodation endorser upon promissory notes for the payment of which said shares had been pledged and which note he had to pay.

We will note the features that particularly distinguish his case from that of Lindsay's.

He avers that his certificates of stock stated on their faces that the amount of the preferred stock of the respondent company was $250,000.00, when in fact it was $350,000.00.    This excess he claims was irregularly issued and delivered at less than par; that

STATE ex rel., LINDSAY et al., vs. J. and M. P. CO. 401

ARGUMENT.

at the time he took the stock he had no knowledge of this discrepancy, but believed the statement on the certificate to be true. There is no averment, however, that his action with respect to the stock would have been different if he had possessed such knowledge.

He further avers that the defendant company are engaged in unlawful proceedings and combinations in restraint of trade.

He states that his purpose in these proceedings is to ascertain the actual value of his stock which he wishes to sell, and that the knowledge so sought may be communicated to probable purchasers.

The return of the respondent positively denies the charge of any illegal proceedings or combinations in restraint of trade.

The return also shows that the one hundred shares of preferred stock were issued at par, and that the proceeds thereof were duly and properly applied to the business of the corporation.

The return admits the discrepancy in the amount of the preferred stock, but claims that the statement on the face of the stock was an inadvertence which caused no injury.

The return avers that the petitioner has been offered the data necessary to ascertain the value of this stock, of which offer he has failed to avail himself. The return also charges that the petitioner is engaged in actual competition with the business of the respondent.

The return of the respondent in this case, which for the purposes of this motion must be accepted as true, throws new light upon the attitude of the petitioner and raises grave doubt as to his right to the mandatory writ.

The return in this case is open to the same objection, as to the unreasonableness of the by-law; the absence of the books asked for, and to the evasive and argumentative character of some of its statements.

As the cases stand upon this motion, the question is simply, whether the petitioners upon the face of the petition and return, are entitled to the peremptory writ for the purpose of ascertaining the actual value of their stock?

The interests involved and the questions raised are grave. While on the one hand it is the duty of the directors of corporations to afford to their stockholders every reasonable opportunity to get accurate information as to the conduct and management of the business of which they merely act as trustees, yet on the other hand it is their duty to protect the interests of the stockholders. The books and papers in their charge should not be subject to unnecessary, unreasonable or untimely inspection. The directors are clearly entitled to have the assurance that the information sought is not for the purpose of injuring their business, or of building up a rival or competitive concern, or any other improper purpose.

Upon careful consideration, we are clearly of the opinion that the Court did not err in granting the alternative writ upon the face of the petition in each case; but in view of the return made by the respondent in each case, we think the motion to quash should not be granted.

We therefore refuse to quash the return in either case.